Can you please call the next case? After you settle in at the desks, if you would approach the podium, both lawyers from both parties, starting with the epilogue's attorney, tell us who you are and who you represent. After you settle in, take a minute. Good morning. I'm George Verdelia. I represent Sandy Hammons and AIIC, the plaintiffs and appellants herein. First this night. Good morning, Paul. I'm sorry. Go ahead. Good morning, Your Honors. Steve Mandel on behalf of the defendant appellees. And I believe we have a cross appeal on a narrow issue in the case. Now, I trust everybody received the case that came down on Friday, Sand Home. One of you filed the motion to set additional authority. We signed that this morning. We all had it on Friday because this is a hot court. We like to read this stuff and keep on it. So we expect you to address that. It might have a slight impact. Near as I can tell. Little I know about these things in this case. So anytime you're ready, Mr. Vendelia. Thank you, Your Honor. Verdelia, yes, thank you, sir. Verdelia, I'm sorry. The trial court in this matter misapplied the Citizen Participation Act. Even before the Supreme Court decisions in Wright Development and Sand Home, but particularly in light of those decisions, the trial court's ruling clearly does not comply with the law regarding the Citizen Participation Act. The trial court's order in August of 2010 said once a motion is filed, that is a motion under the Act, the burden shifts to the plaintiffs to establish that the Act does not apply. We argued before the trial court, and our argument was later confirmed by the Supreme Court in Wright Development, that the moving defendants herein must first establish that the statements being complained of were made in connection with a petition for favorable government action. There was no showing in the trial court. The trial court clearly did not expect defendants to make any such showing. And did not find that they made any such showing. Here there was no identification in the record of any statement that was made in connection with any effort to procure favorable government action. What about the argument that's made that on blogs, people read these blogs and government officials might read those, or citizens who have reported to their government officials, is there some way that that can be connected to this case? The argument that the statements are made in public alone doesn't establish that they are made in connection with any kind of activity. We have cited at page eight of our brief the facts in the record that show that the SPCP and its individuals have not participated in any effort to procure favorable government activity. So they can make these statements in public, but that alone is not enough. It has to be in connection with some effort at procuring government activity, government action, excuse me. Now that's the Wright development case. But we move on to the Sandholm case, which just came down last Friday, in which the Supreme Court said that the movement must establish that the government action being taken by the defendant is the sole basis for the lawsuit. That is, it refers to the underlying rationale of the anti-SLAPP statutes as meritless lawsuits directed solely in response to a petition for government action by the defendant. The Sandholm court is very clear in saying that the Citizen Participation Act is not a refuge for tortfeasors. You look at the purpose of the statute and it is not a new privilege against a defamation claim. The Sandholm court very thoroughly analyzed the act and all the facts and circumstances of that case and found that the defendants therein did not meet their burden of showing that the plaintiff's lawsuit was solely based on defendants' efforts at procuring favorable government action. I point out that it was admitted in the Sandholm case that there was an effort at procuring government action. And it was admitted, at least in part, or it was not controversial at least, that that was not a genuine effort at government action. The Sandholm case addressed this sham exception that the defendants have raised in connection with their briefs and points out quite properly that that sham exception in this context is kind of a red herring because that addresses the defendant's conduct. Defendants might well be pursuing a genuine effort at government activity, but unless the complaint by the plaintiff is based solely on that effort, it doesn't matter whether the sham exception applies or not. The first step you have to look at is the plaintiff's conduct. That is the burden of the defendant, movement, the appellees here. That is a burden that was not even placed on them, far less met by the trial court in this case. So this case is even stronger than the Sandholm case for reversal because there was no showing that any statement, much less all of the statements that are complained of as being defamatory, was made in furtherance of government action, obtaining government action. There's also no showing that the complaint was based in any part, much less solely on defendants' efforts to seek government action, favorable government action. I'll comment briefly on the attorney's fees point. Our position below and the position here was that there was no showing that the client was obligated to pay the fees. We believe that is part of the requirement. We believe they had ample opportunity to file an affidavit of the client showing that it was obligated, not that it had already paid, but that it was obligated to pay. They have not shown that. We ask the court to reverse the dismissal of the complaint and reverse the award of attorney's fees in its entirety. And that concludes my prepared remarks. Thank you very much. Mr. Mandel. How was your weekend? It was great, Judge. As they say in show business, timing is everything. Your case for me is difficult. It's not easy for me to understand where, from your side of the fence, there's any kind of governmental involvement or action. Let me address that, Judge. Please. First of all, both Sandholm and Wright Development make clear that the statute is not limited just to petitioning government, okay? It applies to suits intended to strap. But where's the government interest here? Where's the government process, the favorable government process? Here's what we're talking about, okay? We're talking about acts in furtherance of freedom of speech, freedom of association by individuals in the wake of an FDA recall of this company's products, and they are talking about that in pursuit of increased compliance with FDA regulations, increased compliance with safety standards, which are set by the society, compliance with training certification. It's akin to, in the Wright Development case, where the person goes to a public meeting and then later, after the fact, addresses comments to a reporter. The courts have recognized, including Wright Development, that communication after the event, whether it be to the public at large, the electorate, which the statute defines government to include the electorate, or media channels, there is a governmental purpose involved in that. And oftentimes people achieve governmental action by mobilizing public opinion. However, in your case, aren't you really being overly broad to get yourself in? I don't think so, Judge. If you look at, actually, a letter that one of the plaintiffs sent, and it was at record site 201. She writes a letter to Rachel Ray, and she says, your show featured a story about Nancy Irfan, a woman who suffered from a disfiguring allergic reaction to a permanent makeup product I regretfully manufactured and distributed widely to the permanent makeup community in 2002. With the help of the media, the FDA, and the entire permanent cosmetic community, the product was recalled and removed from the market in 2003, albeit not before several women were injured. It's an example, your Honor, of when something happens in the marketplace. And again, this is a society that is dedicated towards educating the public and setting safety standards. And all of the defendants here are members of the society. It's an example, by the plaintiff's own admission, where people get together and mobilize public opinion that results in a government action, in this instance, an FDA recall. And certainly, and there's a lot of hyperbole in some of these web postings, but certainly they were all designed to, because there was concern about blowback from this, that because of one bad apple, there was going to be an impact on the rest of the industry, and these people were voicing their opinions about that. Now, another thing. Sure, San Home came down Friday, but it did not overrule Walsh. It merely construed the act to require an initial inquiry into whether or not the suit is solely based on this kind of exercise of rights. And that is a good question that I have, sir. Sure. What did the trial court hear that would comply with the step one of section 15 of this act? Let me address that, your Honor. The trial court did not specifically address that issue. But, okay, it is clear from the complaint here, okay, that this claim is objectively meritless. If you look at the defamation claims in particular and the complaint as a general, they say they're all based on comments made between 2006 and 2008. There is no way, given the one-year statute of limitations, that anyone can bring a meritorious defamation case. In fact, this very complaint was filed in Florida in 2008, okay? It was dismissed, and then leave was given to amend. In the Florida complaint, the plaintiff joined everybody, but not a single Florida resident initially. That's the second factor that shows that this is a meritless complaint. What the plaintiffs were doing here was suing defendants in far-off jurisdictions to punish them, okay? There's not a meritorious claim here. They filed stale defamation cases. Well, those are other reasons, right? 2619 allows you to file motions to dismiss based on the fact they belong in Florida. And when you did that, they dismissed their case here. But then you fought that and said, no, no, no, don't let them dismiss it, Judge. We want the county to rule. We want to win. And that was your trial strategy at the time, was it not? First of all, while we do have other defenses to this complaint, right, we could file under 2619, 2615, because a lot of the statements here are protected First Amendment opinion. But the fact of the matter is the CPA was passed to address the situation where a plaintiff, in order to punish defendants for exercising their constitutional rights, files a meritless suit, okay? And, again, whether you look at the tortious interference claim, which is barred by the one-year statute of limitations. We don't have any of that in front of us. All we have is the CPA in front of us, right? So we have the Slap Act part of it in front of us. And to decide that, as Justice Harris is just pointing out, we start with you, on your side. And so reading from Sandholm, applying the doctrine that SAM exception requires the court to first consider whether objective persons could have reasonably expected to procure a favorable government outcome through a public campaign like the defendants' campaign against the plaintiff. So is it rational with an objective person looking at made-up names, anonymous blocks, under false names, attacking what was said in this case, would an objective person, us, decide, yes, yes, that's a good way to get government action against bad people who are poisoning tattoo people. People want tattoos. Well, Your Honor, you're talking now about the second test in the stage, assuming that there is no merit, assuming that the court were to conclude that this suit was based solely upon comments made by the defendants and that it lacked merit, then you go to the so-called SAM exception where the plaintiff would have to offer clear and convincing evidence that our conduct was not genuinely aimed at bringing about governmental action. And I think it is because, I mean, I don't think the plaintiff adduced any such evidence because it happens all the time. We don't get there until you show, until an objective person. I mean, again, this is right in the stand-alone paragraph. It's Head Note 39. Unfortunately, they don't have the paragraph. I'm sorry. I'm looking at the wrong one here. I'm sorry. I'm misquoting. I've got my case notes. But go ahead. So what I'm saying is clearly the speech here involved a matter of public concern because, as I said, it's not disputed that this came in the wake of the recall of this product. And that happens a lot, whether it's you're talking about the deep water oil spill in the Gulf or a recall of a controversial product or comments, posts made in a public meeting about whether a developer should be entitled to develop a project, people speak out in order to educate the electorate, their colleagues, their sympathizers, all to mobilize conduct to bring about governmental change. And that's why I think the statute, which by its terms is supposed to be liberally construed, talks about. Let me ask you about that. In paragraph 51 of the Supreme Court ruling, it says dismissal of a lawsuit pursuant to the act is a drastic and extraordinary remedy. Now, do you think that would be liberal construction of the statute or constrict construction? Well, I can't reconcile the fact that dismissal of a lawsuit in the assessment of attorney's fees is a drastic remedy. I can't reconcile that with the liberal construction. I don't know that the court was saying, therefore, you shouldn't give a liberal construction. As I said, Walsh, right development versus Walsh is still good law, and it says that the act is to be liberally construed. So I don't think that this would be a drastic measure, and I think the court has to focus and the court can focus on the complaint in order to analyze, is this really a legitimate claim to recover damages as the Sand Home Court required? And I think there's just no way. You can't sue in 2010 for statements that were made in 2006. And so you're arguing that if you have other defenses, the statute of limitations, the fact they sued in other states, the court should look at that and then bring that into SLAPP. That under SLAPP, SLAPP would also apply to give you defendants their attorney's fees if they have legitimate other defenses, other than the bad motive. Is that right? I think the court, the Sand Home Court says there's got to be an initial inquiry into whether or not this is baseless, and I think from the face of the complaint and the information in the record, the court can conclude that this is baseless. Counsel, can I ask a question about the fees? Sure. Was there a hearing on attorney's fees or the court ruled from the petition? There was a petition for fees and a hearing. Our fee petition, I think, was in the neighborhood of $66,000. It included a deposition that was taken at the request of the plaintiff in order to oppose the CPA motion. Yeah, I just didn't know if there was a hearing on it, if there were witnesses presented on the fee petition or not. There was not an evidentiary hearing. There was an oral argument. And after the court, and one of our concerns here is after the court reduced the fee award from the $66,000 to the $8,100, we asked on what basis that that was done, and the court did not articulate any basis. So I think our position is that, therefore, we're dealing with not an abusive discretion, but rather a de novo review. And at the very least, the case ought to be remanded for determination on what fees, although we asked. Was the fee petition sworn to? It was supported by an affidavit, yes. Okay. Thank you. Mr. Vendelia, briefly. Yes, Your Honor. I don't recall which justice asked the question, but the accurate question is, where is the effort to procure favorable government action? If counsel's correct that all you have to do is be commenting on a matter of public policy, there is no defamation action. Anybody can say, I was commenting on a matter of public policy. The point of the statute is to protect my right to petition government for some favorable action and not to be sued solely because I am petitioning that government for favorable action. If I make comments to other people, electorate, reporter, in connection with that petition, that still would be protected speech. That's not what we have here. Well, in Sandholm, as you pointed out in your opening, the Supreme Court commented on the fact that everybody agreed they were seeking government action, that the people in Sandholm, the defendants, were seeking to get Mr. Sandholm fired, or the coach fired. And so that is not a cloak. They still went ahead. It couldn't be clearer. They were seeking a firing by the government agency of a government employee, and that was insufficient in the eyes of our Supreme Court to apply the act and say it's immunized. Exactly, because they said it has to be the sole basis for the complaint, that if you have a legitimate tort action, and you can't look at other defenses because the point is to look at the SLAPP statute by itself. We haven't briefed or argued or discussed any of the other defenses. I will point out that as far as statute of limitations defenses go, that is a form of defense. That's waivable. So that doesn't mean it's a meritless complaint to begin with, if the statute of limitations applies or not applies. Moreover, the complaint does say continuing through to date, starting in 2006 and 2008, continuing through to date. So I think that is another red herring, if you will, submitted by the defendants. I just want to emphasize at page 8 of our opening brief, we talk in detail about all of the indicia that the SPCP was not pursuing favorable government action. It was commenting on things as a matter of, quote, public policy in its view. But it was not pursuing any favorable government action, wasn't pursuing any government action at all. It wasn't lobbying. It wasn't asking the federal government to adopt any guidelines. It was not asking any federal or state legislative body to set any standards. All of those are cited at page 8 in the brief and reflect what's in the record. Thank you very much. Thank you very much. Thank you for the brief. Thank you for the argument. This case will be taken under advice.